**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHN RAE, *et al.*,

      Plaintiffs,

v.                                           CASE NO.: 3:14-cv-208-J-32JBT

GINN DEVELOPMENT COMPANY, LLC, *et al.*,

      Defendants.
_____/

**THE LUBERT-ADLER PARTIES' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

To no avail, Plaintiffs stretch to find a theory – no matter how implausible – to shift responsibility to the Lubert-Adler Parties for losses Plaintiffs sustained in the Florida real estate market. Like the recently dismissed complaint in *Lawrie*, Plaintiffs' Second Amended Complaint ("SAC") includes a wealth of allegations of misconduct committed against non-parties that are unconnected to any supposed harm to these Plaintiffs, unsupportable contentions that the Lubert-Adler Parties "controlled" unaffiliated national banks that purportedly participated in wrongdoing, and assertions that Lubert-Adler's role as an investor and business associate of Bobby Ginn and his affiliated companies makes it liable for fraud. Plaintiffs' Response to the Lubert-Adler Parties' Motion to Dismiss only confirms the fatal defects in the SAC.

### A. Purported Misconduct Directed Toward Non-Parties

The SAC borrows liberally from the third amended complaint in *Lawrie v. Ginn Development Co., LLC*, No. 3:09-cv-446 (M.D. Fla.) ("*Lawrie* TAC"). This Court's order dismissing the *Lawrie* TAC with prejudice underscores the SAC's flaws.

The *Lawrie* TAC consisted largely of misconduct directed toward non-party lot purchasers, including "misrepresentations Defendants made in e-mails to non-Plaintiffs…, the use of deceptive sales tactics…, [and] the recording of false information to be used in creating appraisals." Order Dismissing TAC, p. 4. The *Lawrie* plaintiffs could not "explain[] how, if at all, these actions relate[d] to Plaintiffs' purchases." *Id.* Plaintiffs' SAC embraces these same allegations (verbatim, in many instances). Specifically, Plaintiffs devote almost all of the SAC's 45-page "Fact" section to misconduct purportedly directed at non-parties, while offering just a handful of allegations relating to their own lot purchases.

Included among the SAC's allegations relating to non-parties are several pages dedicated to the Credit Suisse loan procured to develop five Ginn communities. *See* SAC ¶¶ 130-140. Yet Plaintiffs admit that none of those Ginn communities are Bella Collina and Reunion, the two developments where Plaintiffs purchased their lots. *See id.* ¶¶ 134-135. Moreover, Plaintiffs bought their lots in 2004 and 2005, but acknowledge the Credit Suisse loan closed in 2006. *See id.* ¶ 131. As in *Lawrie*, Plaintiffs allege they were damaged "at the moment [they] closed on their lot purchases." *Id.* ¶¶ 121-123. Thus, "the Credit Suisse deal cannot have caused Plaintiffs' damages as alleged" because it occurred long after Plaintiffs bought their lots. Order Dismissing TAC, p. 4.

Like the *Lawrie* TAC, the bulk of Plaintiffs' allegations have nothing to do with their own purchases. These "allegations of misconduct that are seemingly unconnected to Plaintiffs' harm violate Rule 8's requirement that Plaintiffs make a short, plain statement showing that they are entitled to relief." *Id.*, pp. 4-5.

### B. The SAC Lacks Specific Allegations of Misconduct by the Lubert-Adler Parties

The Response also highlights the SAC's lack of specific allegations against the Lubert-Adler Parties. Plaintiffs do not dispute that the SAC contains no allegations against the Lubert-Adler Parties in the short section describing their purchases of Lot 186 in Bella Collina and Lot 28 in Reunion. *See* SAC ¶¶ 81-92. With respect to Lot 332 in Bella Collina, Plaintiffs note that "Rae & Taylor entered into a contract for the purchase of [that lot] with Dean Adler *personally*," *see* Response, p. 11, but offer no response to the Lubert-Adler Parties' point that Plaintiffs attribute all acts of misconduct (however deficient) relating to that purchase to persons other than the Lubert-Adler Parties. *See* SAC ¶¶ 58-60.

2

Plaintiffs also do not respond to the Lubert-Adler Parties' point that Plaintiffs' omission-based fraud claims require them to plead plausibly that the Lubert-Adler Parties owed them a duty of disclosure. *See, e.g., Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007). Like the SAC, the Response is silent on this point.

Plaintiffs respond that, because they "allege in the SAC that Ginn and Lubert-Adler were a RICO enterprise," they need not make specific allegations against each defendant. Response, p. 3. But a circular assertion that a "RICO enterprise" exists does not suffice – Plaintiffs must plead specific facts demonstrating that Lubert-Adler "knowingly devised or participated in a scheme to defraud Plaintiffs." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000); *see also Lawrie v. The Ginn Companies, LLC*, 2010 WL 3746724, *6 (M.D. Fla. 2010) ("allegations of 'generalized conduct' against multiple defendants are only proper if the complaint also alleges facts which evoke more than 'the mere possibility' that each individual defendant acted unlawfully").[1] Plaintiffs cannot satisfy Rule 9(b)'s stringent requirements by "lumping" the parties together or asserting that the Lubert-Adler Parties "controlled" or "participated" in the scheme. *See, e.g., Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1343 (S.D. Fla.

---

[1] Plaintiffs cite to *Lester v. Percudani*, 556 F. Supp. 2d 473 (M.D. Pa. 2008), and *Acciard v. Whitney*, 2008 WL 5111307 (M.D. Fla. 2008), as cases in which real estate purchasers stated RICO claims arising out of allegedly fraudulent sales practices. These decisions only serve to highlight what is missing from the SAC – specific allegations of each defendant's knowing participation in a scheme to defraud. *See Acciard* at *5 (identifying specific allegations of wrongdoing against each defendant); *Lester* at 476-480 (same).

2008); *West Coast Life Ins. Co. v. Life Brokerage Partners LLC*, 2009 WL 2957749, *8 (S.D. Fla. 2009).[2]

Unable to make specific allegations of unlawful conduct by the Lubert-Adler Parties, Plaintiffs repeatedly point to Lubert-Adler's role as a long time investor in Ginn. *See, e.g.*, Response, pp. 6, 20. Per Plaintiffs, Lubert-Adler's investments in Ginn properties make it "implausible…that [Lubert-Adler] was not aware of" fraud purportedly committed by others. *See id.*, p. 20. Like the plaintiffs in *Lawrie*, Plaintiffs "have improperly bridged a conclusory allegation…with specific allegations of otherwise proper conduct." *Lawrie* Order Dismissing First Amended Complaint, p. 13 n. 19; *see also Lawrie* Order Dismissing Second Amended Complaint, p. 7 n. 3 (same). Even Plaintiffs' allegations betray them, as they adopt the observation from Lubert-Adler's website that it relies on "alliances with financially motivated, local operating partners who possess superior…execution capabilities." Response, pp. 6, 11, and 12. In this instance, Ginn was the "local *operating* partner" that managed the developments, and Plaintiffs have no factual allegations (to the contrary. Ultimately, allegations of legal conduct cannot form the basis of claims against the Lubert-Adler Parties.

### C. Plaintiffs' Theory of Proximate Cause Does Not Withstand Scrutiny

Finally, Plaintiffs' theory of proximate cause defies credulity. Plaintiffs assert they "were damaged the instant they closed on their lot purchases as a result of the scheme."

---

[2] Plaintiffs repeatedly point to paragraph 27 of the SAC as the basis for asserting that they have specifically alleged that the Lubert-Adler Parties participated in a "fraudulent pre-selling and planning strategy." Paragraph 27 does not contain a single specific allegation against the Lubert-Adler Parties, but merely conclusory assertions that Lubert-Adler "engaged" or "participated" in fraud without supporting factual averments.

4

Response, p. 15.  Thus, the "***decline in the real estate market after Rae & Taylor's purchases has no bearing on this case or the damages claimed***." *Id.* (emphasis added).

"[C]ourts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006). Plaintiffs bought three undeveloped lots at the height of the real estate boom.  In light of the pleading-stage scrutiny mandated by *Williams* and the well-known effect the real estate collapse had on property values in central Florida,[3] it is incumbent on Plaintiffs to plead facts to show that their lots were indeed worth less in 2004 and 2005 than the sales prices due to the Defendants' alleged misconduct (even assuming this "inflated price" theory is viable). Plaintiffs do not even try to make such a connection.  The SAC contains no averments regarding the actual value of Plaintiffs' lots when purchased, only conclusions that the lots were worth far less than the prices Plaintiffs paid.  *See, e.g.,* SAC ¶¶ 121-123.[4]  Plaintiffs' unsupported assertions regarding their purported harm cannot suffice in light of the "obvious alternative explanation" for the diminution in the value of Plaintiffs' properties.[5]

---

[3] *See, e.g., SEC v. Kirkland*, 2008 WL 1787234, *5 n.5 (M.D. Fla. 2008) ("the Court can take judicial notice of the decline in the central Florida housing market").

[4] The SAC's only allegation regarding the value of any of Plaintiffs' lots is an allegation of the ***current*** value of Lot 186 in Bella Collina.  *See* SAC ¶ 84.

[5] In the Response, Plaintiffs cite to the long-since abrogated standard for motions to dismiss articulated in *Conley v. Gibson*, 335 U.S. 41 (1967), for the proposition that "it cannot be determined, as a matter of law and beyond doubt, that Ray & Taylor cannot prove any facts entitling them to relief." Response, p. 5.  That is no longer the test.  Instead, the touchstone is whether the complaint states a claim "that is plausible on its face," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).

Respectfully submitted,

**TANNER BISHOP**

By: */s/ Michael G. Tanner*

Michael G. Tanner
Florida Bar Number 261300
Helen A. Peacock
Florida Bar Number 016196
One Independent Drive, Suite 1700
Jacksonville, FL 32202
(904) 598-0034/ (905) 598-0395 (fax)
*mtanner@tannerbishop.com*
*hpeacock@tannerbishop.com*

**BALLARD SPAHR LLP**
Stephen J. Kastenberg (admitted *pro hac vice*)
William Igoe (admitted *pro hac vice*)
Ruth S. Uselton (admitted *pro hac vice*)
1735 Market Street
Philadelphia, PA  19103
(215) 665-8500
*Kastenberg@ballardspahr.com*
*Igoew@ballardspahr.com*
*Useltonr@ballardspahr.com*

*Attorneys for Lubert-Adler Management Company, L.P. d/b/a Lubert-Adler Partners, L.P., Dean Adler, and Ira Lubert*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of October, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

October 6, 2014                              /s/ *William B. Igoe*
                                                     William B. Igoe